| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |

Timothy J. O'Brien, §
§
      Plaintiff, §
§
versus §      Civil Action H-08-2337
§
University of Houston, et al., §
§
      Defendants. §

## Opinion on Dismissal and Summary Judgment

1.    *Introduction.*

A public university did not hire a graduate student as a teaching assistant for an additional semester. The student says that the university violated his free-speech rights when it denied him the teaching job and referred him for discipline. The student sued the man who was president and the university under the Civil Rights Act of 1868. 42 U.S.C. § 1983. The university has moved for dismissal and summary judgment, and it will prevail.

2.    *Background.*

Timothy J. O'Brien has been a doctoral student at the University of Houston since 2006. He is a founding member of Students Against Sweatshops and Students for Fair Trade. In addition, O'Brien has complained about several departmental policies including locked restrooms and faculty appointments.

Three disciplinary referrals against O'Brien were made by two people. The two made by John Rudley, interim University of Houston president, were found to be substantiated by the disciplinary committee, and O'Brien was placed on probation.

First, on September 19, 2007, O'Brien interrupted a meeting of the faculty senate with a fair-trade protest. He was loud and did not leave when asked.

Next, on December 4, 2007, he disrupted a holiday party honoring student leaders by taking pictures while a man associated with him accosted Rudley with a large, cardboard bank-draft. He argued loudly and refused when asked to leave by a guard.

The third complaint against O'Brien involved an argument with a librarian and was resolved in his favor.

O'Brien had been a teaching assistant for the fall 2006 and spring 2007 semesters, but he was not offered a position in any semester in the next three years. Although O'Brien received good marks from the professors whom he assisted, he was described as needing to "be a little more sensitive to students" and frequently making "derogatory comments about his students, making one especially sexist comment."

Professor Steven Deyle also noted that O'Brien was not cooperative during meetings. O'Brien did not attend a meeting to review the department's grading policy. He assigned "radically different" grades from the other teaching assistants, leading to many student complaints. Deyle had to review and re-grade many of these papers himself.

On June 20, 2008, and on O'Brien's request, Deyle elaborated on his evaluation and expressed doubts that O'Brien could fairly assess female students given comments he made about one particular student. In response to this student's complaint about her grade, O'Brien explained to Deyle that he "didn't grade her tits like she wanted me to," but that he would "only grade what's in the blue book." Deyle recommended that O'Brien no longer serve as a teaching assistant for anyone in the department.

3. *Positions.*

The history department offered thirty-eight research-assistant and teaching-assistant positions in the 2006-2007 academic year. Fifty students applied. In the 2007-2008 academic year, forty-eight students applied for thirty-four positions. In the 2008-2009 academic year, fifty-nine students applied for twenty-eight positions. O'Brien requested a leave of absence to care for his terminally-ill father on August 11, 2008.

O'Brien claims that the university violated his right to free speech by filing false disciplinary referrals and denying him a teaching assistantship in response to his advocacy of fair trade and other issues.

4. *The Statute.*

To prevail on a civil rights claim, O'Brien must establish that a person with the authority of the state deprived him of a federally-protected right. Because the right asserted is freedom of expression, he must establish that the university acted against him by denying him

a job because it did not like the content of his speech – content of his speech that was not clearly connected to a national pedagogical or administrative interest. *U.S. Const. Amend 1; 42 U.S.C. § 1983.*

5. *Immunity.*

The University of Houston is a state agency. Under the current interpretation of the Constitution, states and their agencies are immune from federal jurisdiction unless Congress has expressly abrogated it or the state has consented to federal jurisdiction. *Hans v. Louisiana,* 134 U.S. 1 (1890). The state has not consented to jurisdiction in this case. It has been judicially-discovered that Congress did not abrogate immunity when enacting 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 342 (1979). This court has no jurisdiction over the University; claims against it will be dismissed.

6. *Want of Prosecution.*

O'Brien did not appear for a pre-trial conference on May 4, 2009, because of his father's death. He also did not appear for a deposition on May 27, 2009, despite hand-filing a document the day before. He did not tell the court or counsel that he would not attend, and he has not explained his absence. He has also not responded to the motion for summary judgment filed on June 10, 2009.

O'Brien submitted three motions in June – a motion for recusal, a motion for "defense counsel perjury," and a motion for extension of time because he did not have enough time to reply to the summary judgment motion given the death of his father. In the months since the summary judgment deadline, he has not responded.

7. *Summary Judgment.*

   A. *Rudley the Administrator.*

State actors acting within their discretionary authority are partially immune from prosecution for the violation of an individual's Constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). Individuals can sue them in federal court to enjoin further misconduct. *Ex Parte Young,* 209 U.S. 123 (1908).

O'Brien says that he was denied a teaching assistantship because Rudley, the interim president, was angry about O'Brien's protests. He has sued Rudley individually and in his official capacity. Like the business-judgment rule, no liability attaches to policy decisions a university president is appointed to make.

Because Rudley has left his employment with the University of Houston, a judgment preventing him from abusing his authority would be something less than an empty gesture.

B.  *Rudley the Man.*

To be sued individually, Rudley must have been personally involved in or causally connected to conduct that deprived O'Brien of his rights. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). He was not.

O'Brien has identified no action by Rudley that bore on the decision to deny him a teaching assistantship. Rudley has no direct authority over teaching assistant selection, and Deyle's e-mail describes legitimate, non-retaliatory reasons for denying O'Brien a position. Deyle is not Rudley. O'Brien cannot connect Rudley to his being denied a teaching assistantship anymore than Rudley can be connected to O'Brien's getting one previously.

Rudley complained about O'Brien twice. The disciplinary committee found both complaints to be credible and placed O'Brien on probation. On both occasions, O'Brien had clearly violated the disciplinary code by "obstructing or interfering with university functions or activities." Section 3.2. It appears that O'Brien has retaliated against Rudley by his bringing this suit.

8.  *Conclusion.*

The University of Houston is not susceptible to jurisdiction for this kind of claim. John Rudley was not involved in denying O'Brien a teaching assistantship. The University's motion to dismiss and John Rudley's motion for summary judgment will be granted.

Signed on March 8, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge